# APRIL 5, 1939

EX PARTE WINFIELD SCOTT, JR.

No. 7377.

WINFIELD SCOTT, JR., ET AL. V. JESSICA PATTERSON SCOTT.

No. 7456.

WINFIELD SCOTT, JR., V. HONORABLE JOEL R. BOND ET AL.

Motion No. 13625.

Decided January 4, 1939.
Rehearing overruled April 5, 1939.
(123 S. W., 2d Series, 306, 126 S. W. (2d) 626.)

2

4

BRIEFS· IN HABEAS CORPUS PROCEEDING.
No. 7377.

*Baskin & Baskin, Cantry, Hanger, McMahon, McKnight & Johnson,* all of Fort Worth, *Hamilton, Harrell, Hamilton & Turner,* of Dallas, for relator.

A contempt proceeding, in a case where the contempt is committed out of the presence of the court, for the failure to pay alimony must be supported by legal affidavit and such application must be verified according to law, and where the purported affidavit attached to the motion to have relator adjudged guilty of contempt of court was sworn to before the attorney for the complaining party, it was fatally defective, an absolute nullity, and legally insufficient to support the jurisdiction of the district court to hold relator in contempt. Rice v. Ward, 93 Texas 532, 56 S. W. 749; Blum v. Jones, 86 Texas 492, 25 S. W. 694; Floyd v. Rice, 28 Texas 341; 13 Cyc. 852.

*Thompson, Knight, Baker, Harris & Wright,* of Dallas,

*Marvin B. Simpson, Robert Harrison,* and *Harris Brewster,* all of Fort Worth, for respondent.

A writ of habeas corpus is only available when the order of contempt complained of is asbolutely void, and the claim that the order is void only because the court erred in overruling relator's plea of privilege, is insufficient to entitle relator to any relief, because such order is neither void nor voidable. Ex parte Reed, 100 U. S. 12; Perry v. State, 41 Texas 488; Allen v. Woodward, 111 Texas 457, 239 S. W. 602.

BRIEFS ON CERTIFIED QUESTIONS.
No. 7456.

Attorneys for appellants same as for relator above.

Mrs. Elizabeth Scott, the mother of the defendant, Winfield Scott, Jr., was not a necessary party to the divorce proceedings between plaintiff and Winfield Scott, Jr., and was entitled to her plea of privilege to be sued in Tarrant County, the county of her residence, and not in Dallas County where the divorce suit was filed. Firquin v. Money, 67 S. W. (2d) 892; McLeroy v. Thrift, 22 S. W. (2d) 497; L. E. Whitham Construction Co. v. Wilkins, 90 S. W. (2d) 916.

Attorneys for appellee same as for respondent above.

Where plaintiff files suit for divorce and asked for a division of the community property and that she be provided with a maintenance fund out of the separate property of her husband and a portion of the community property, and alleges that the separate property of the husband is in the hands of a third party and are being claimed by said third party, the third party is plainly a necessary party to the divorce action within the meaning of subdivision 29a of Article 1995, R. S. 1925. Hedtke v. Hedtke, 112 Texas 404, 248 S. W. 21; Farris v. Farris, 15 S. W. (2d) 1083; Bowyer v. Bowyer, 130 Texas 257, 109 S. W. (2d) 741.

In motion, No. 13,625, for leave to file petition for mandamus, the attorneys are the same as those for the respective parties above.

MR. JUSTICE CRITZ delivered the opinion of the Court.

As indicated by the above captions, this opinion will dispose of what in fact are three separate proceedings in this

Court. All, however, grow out of a divorce suit pending in the District Court of Dallas County, Texas. Because the three cases are related to a certain extent with each other, and were submitted and argued together in this Court, we will dispose of them all in this opinion. We will later divide the opinion into three sections, one for each case.

The three parties involved in this opinion, excluding the Justices of the Court of Civil Appeals at Dallas, are Mrs. Jessica Scott, Winfield Scott, Jr., alleged husband of Mrs. Jessica Scott, and Mrs. Elizabeth Scott, the mother of Winfield Scott, Jr. For convenience, we shall hereafter refer to Mrs. Jessica Scott as the wife, to Winfield Scott, Jr., as the husband, and to Mrs. Elizabeth Scott as the mother.

On November 12, 1937, the wife, while a resident of Dallas County, Texas, filed suit for divorce in the 44th District Court of that county against the husband, alleged to be a resident of Tarrant County, Texas. The mother, also alleged to be a resident of Tarrant County, Texas, was made a party defendant to such suit, for purposes we will later detail.

The wife's petition in the district court in substance prays for the following relief against the husband: For service; for divorce; for order requiring the husband to file proper inventories; for partition and division of property; for alimony pending the divorce proceedings; for attorney's fees; and for costs.

The wife's petition alleges grounds for a divorce from the husband, and then alleges that in 1925, some six years before she was married to the husband, the husband made a deed to the mother, purporting to convey to her numerous tracts of land in Tarrant, Johnson, and Parker counties, Texas. It is alleged that such deed did not in truth convey the actual title to the mother, but was, and is, merely a pretended and simulated conveyance. It is then alleged that the mother undertook to hold the properties included in such deed, not for herself, but merely as trustee for the husband, who is still the real owner thereof. The petition in effect attempts to allege that the mother is merely the owner of the legal title to the lands included in the above-mentioned deed, but that the husband is still the owner of the real title to such lands, and is entitled to have same reconveyed to him by the mother. The petition then prays that the mother be decreed to be the trustee for the husband, and as holding the lands included in the above deed merely as trustee for him. Also, the petition prays that the court appoint a trustee, with full power to collect the rents, revenues, and income arising out of the properties included in such deed, and with the moneys so derived build the wife a

home. Also, the petition prays that the court fix such other charges on such properties, in favor of the wife, as to the court may seem proper, for her use and benefit during her lifetime. It will readily be seen that the mother is made party to the divorce action in an attempt to have the Dallas County District Court adjudge that she is not the real owner of the properties or lands included in the deed from the husband to her.

After the filing of the above suit, and after service had been had on him, the husband filed his plea of privilege to be sued in the District Court of Tarrant County, Texas. This plea was in statutory form, and was filed on December 11, 1937.

After the filing of the above suit, and after service had been had on her, the mother filed her plea of privilege to be sued in Tarrant County, Texas. This plea was in statutory form, and was filed on the same day as that of the husband.

On December 28, 1937, the wife filed a controverting affidavit to the husband's plea of privilege. Also, on December 17, 1937, the wife filed a controverting affidavit to the mother's plea of privilege. For the purposes of this opinion we will assume that these controverting affidavits were sufficient to present all questions ruled on by the trial court.

On January 17, 1938, the District Court of Dallas County heard the plea of privilege filed by the husband, together with the wife's controverting affidavit thereto, and overruled such plea; to which action of the court the husband duly excepted and gave notice of appeal to the Court of Civil Appeals.

On the date last mentioned, January 17, 1938, the district court also heard the plea of privilege filed by the mother, together with the wife's controverting affidavit thereto, and also overruled such plea; to which action of the court the mother duly excepted and gave notice of appeal to the Court of Civil Appeals.

Both of the above-named appellants duly perfected their appeals to the Court of Civil Appeals. We will later in this opinion discuss and dispose of the questions pending in this Court regarding the same.

In this connection, we will note that the husband and the mother filed their appeal bonds on January 18, 1938, and the transcript was filed in the Court of Civil Appeals on January 19, 1938.

After the happening of the above events, the district court made an alimony order requiring the husband to pay the wife the sum of $480.00 per month, in semi-monthly installments

of $240.00 each, pending the final disposition of the divorce action. The husband failed to pay the alimony as ordered, and on February 3, 1938, the district court held the husband in contempt for his failure to obey such alimony order, and fined him $100.00 and committed him to jail for three days, and until he should purge himself of such contempt by paying the sum of money past due under such alimony order. The husband was duly committed to jail under the above contempt order. This Court then granted the husband a writ of habeas corpus, and ordered him released on giving bond in the sum of $5,000.00. The bond was given, and the husband is now at large, pending the decision of this Court on such matter.

## No. 7377.
### HABEAS CORPUS PROCEEDING.

■ It is a statutory law of this State that the district court before which a divorce suit is pending has power and jurisdiction to enter an alimony order in favor of the wife, and against the husband, pending final disposition of the divorce proceeding. Art. 4637, R. C. S. 1925.

It is the settled law of this State that under the above statute the district court has power and jurisdiction, not only to make an alimony order in favor of the wife and against the husband, but it has the further power and jurisdiction to enforce such order by proper contempt proceedings; and such power and jurisdiction exist even though at the time such alimony order or contempt proceedings be had the judgment in the divorce proceeding is pending on appeal in the Court of Civil Appeals. Ex parte Hodges, 130 Texas 280, 109 S. W. (2d) 964.

■ Where a husband has been committed to jail by contempt order of the district court, for disobeying an alimony order, the original habeas corpus proceedings in the Supreme Court brought by the husband for relief from commitment to jail is a collateral attack on the district court's contempt order, and must fail, unless such contempt order is utterly and absolutely void. Ex parte Hodges, supra.

■ It is the law of this State that in an ordinary civil suit an appeal from an order overruling a plea of privilege does not suspend the power of the trial court to proceed to try the case on its merits. Martin v. McKean & McNeal (Com. of Appls.), 257 S. W. 241. This being the rule, and it also being the rule that an alimony order can be made and enforced while the main divorce case is on appeal, it certainly cannot be said that

the district court before which a divorce suit is pending is without jurisdiction to make and enforce an alimony order against the husband after such court has overruled the husband's plea of privilege. It follows that the alimony order and the contempt order here involved were neither of them void because made after a plea of privilege had been filed by the husband and overruled by the court. Furthermore, the fact that an appeal had been perfected to the Court of Civil Appeals at the time the alimony order was entered, and at the time the contempt hearing was had and contempt order entered, did not, and does not, affect the validity of such order. Ex parte Hodges, supra.

It is contended that the case of Shell Petroleum Corporation v. Grays, 122 Texas 491, 62 S. W. (2d) 113, is authority to hold that the district court was without jurisdiction to make and enforce an alimony order in this case, after a plea of privilege had been filed, overruled by the court, appealed from, and the appeal perfected in the Court of Civil Appeals. The opinion in the Shell Petroleum Corporation Case, supra, simply holds that where the trial court erred in overruling a plea of privilege or venue, in a suit regarding title to land, it erred in thereafter appointing a receiver for such land. Nowhere in the opinion is it held, or even intimated, that the order appointing the receiver was utterly void. It was simply held that, "since the trial court should have sustained the plea of privilege, he erred in appointing a receiver." As conclusive proof that the Shell Petroleum Corporation Case is not authority for holding this order void, it was later held that the receiver appointed in that case was entitled to his fees. This could not be so if the receivership was absolutely void. Shell Petroleum Corp. v. Grays (Ct. Civ. App.), 87 S. W. (2d) 289; 131 Texas 515, 114 S. W. (2d) 869.

It appears that the hearing in the district court, at which the husband was adjudged guilty of contempt for disobedience of the prior alimony order, was had on a written complaint or information made and filed by the wife. This complaint was sworn to by the wife before a notary public, who, at the time, was one of her attorneys in the divorce case and also in the contempt proceedings incident thereto. Counsel for the husband here contend that in a proceeding to punish for contempt for disobedience of an alimony order, a sworn complaint or information is a necesary jurisdictional prerequisite. Counsel then contend that where the complaint or information is sworn to by the wife before a notary who is her attorney in the case,

the affidavit is void, and therefore the complaint or information stands before the court unsworn to.

■ Generally speaking, contempt proceedings are criminal in their nature, and this is true regardless of whether they grow out of criminal or civil actions. The reason for such classification is that they involve the essential idea of willful disobedience of judicial orders and decrees. Since contempt proceedings are essentially criminal in nature it follows that they should conform as nearly as practicable to proceedings in criminal cases. 9 Texas Jur., p. 618, par. 33; 12 Amer, Jur., p. 434, par. 67; 13 C. J., p. 57, par. 81.

■ It is the rule in this State, as well as the rule generally, that before a court has jurisdiction to punish a person for a contempt committed out of the presence of the court, there must first be filed an information or complaint in writing, duly sworn to, informing the accused of the nature and cause of the accusation against him. Ex parte Foster 44 Texas Crim. Rep., 423, 71 S. W. 593; Ex parte Landry, 65 Texas Crim. Rep., 440, 144 S. W. 962; Ex parte Duncan, 78 Texas Crim. Rep., 447, 182 S. W. 313; Ex parte Sturrock, 80 Texas Crim. Rep., 307, 189 S. W. 487; 13 C. J., p. 64, par. 89.

■ An affidavit is an oath or affirmation reduced to writing and sworn to or affirmed before some officer who has lawful authority to administer it. Shelton v. Berry, 19 Texas 154; 70 Am. Dec., 326. Under this definition the complaint in the contempt proceedings here under consideration cannot be said to have been sworn to, unless the notary who attempted to swear the complainant had lawful authority so to do.

It is the general rule in criminal cases that the attorney for the accused is incompetent to take affidavits to papers, motions, etc., filed therein. LeJuan v. State, 126 Texas Crim. Rep., 151, 70 S. W. (2d) 589; Bell v. State, 129 Texas Crim. Rep., 551, 89 S. W. (2d) 995; Maples v. State, 60 Texas Crim. Rep., 169, 131 S. W. 567. These authorities could be multiplied many times, but we think they are sufficient to show the criminal rule.

Since this case is essentially criminal in its nature we think the above criminal rule should be applied. It is true that this affidavit was not taken by the attorney for the accused, but the affiant is the vitally interested accuser, and her oath was taken by her attorney in the case. It follows that every reason for the application of the rule here exists. Certainly the affidavit in this case should be taken under circumstances that would

subject the affiant to the pains and penalties of perjury. It is difficult to see how this could be so where the affidavit is taken by the affiant's own attorney.

■ From all that we have said it is evident that we hold that the original alimony order, in so far as shown by this record, was, and is, valid. It is ordered, however, that the relator be enlarged because we hold that the complaint charging him with contempt was insufficient to invoke the jurisdiction of the district court. It is further ordered that our judgment enlarging the relator is without prejudice to the power of the district court to enforce its alimony order by proper proceedings. Of course, the husband, if such proceedings are again attempted, has the right to make any lawful defense or defenses thereto.

No. 7456.
CERTIFIED QUESTIONS.

We now come to consider the case pending before this Court on certified questions from the Court of Civil Appeals concerning the issue of venue as regards the mother, Mrs. Elizabeth Scott.

As shown by the general statement we have heretofore made, the district court overruled the pleas of privelege filed by the husband and the mother, respectively, and they both appealed. On original hearing the Court of Civil Appeals at Dallas affirmed the judgments of the district court as to both pleas. The husband and the mother both filed motions for rehearing. The Court of Civil Appeals duly considered and overruled the motion filed by the husband. We will consider that matter later in this opinion under Motion No. 13625. On consideration of the motion for rehearing filed by the mother the Court of Civil Appeals has reached the tentative opinion (Chief Justice Bond dissenting) that the district court erred in overruling her plea of privilege. In such condition of the record the Court of Civil Appeals has certified to this Court the following questions:

"1. Assuming the allegations of plaintiff's petition, in substance set out above, to be true, is it shown that Mrs. Elizabeth Scott is a necessary party to the action by plaintiff against Winfield Scott, Jr., within the meaning of subdivision 29a of Art. 1995 R. C. S.?

"2. Assuming plaintiff's allegations, as substantially set out above, to be true, can Mrs. Elizabeth Scott be compelled to defend the action over her plea of privilege to be sued in the county of her residence, or in the county where a major por-

tion of the land is situated, on the theory that there can be no proper division of the estate between the spouses (as authorized by Art. 4638 R. C. S.), unless she is a party to the suit?

"3. If either of the above questions is answered in the affirmative, was the proof sufficient to show the existence of the fact or facts relied upon to confer venue of the cause on the court below as to Mrs. Elizabeth Scott? Phrasing the question differently: can plaintiff rely upon the unproven allegations of her petition to establish the existence of the venue fact or facts relied upon?"

■ As we construe questions 1 and 2, above quoted, and here certified, they both involve the law question as to whether, in this action, the mother is a necessary party within the meaning of the term "necessary parties" as used in Section 29a of Article 1995, R. C. S. 1925, as amended. In fact, it is certain that no venue statute can give venue against the mother in Dallas County, unless it can be said that the venue statute just mentioned does so. In other words, unless the mother is a necessary party to this suit within the meaning of the above statute, venue lies in Tarrant County.

When we come to consider the deed from the husband to the mother we find that it is absolute on its face, and by its terms conveys to the mother the fee simple title to many tracts of land in this State, none of which are situated in Dallas County. When we examine this record, we find that this deed was executed and delivered six years before even the marriage of the husband and the wife; and no fact is alleged which connects the transaction by which such deed was executed and delivered with any transaction between the husband and the wife on the one side, and the mother on the other, or between the wife and the mother. When we consider this record further, we find that the wife, in a divorce action between her and her husband, seeks to join the mother thereto in order to have the court decree that the mother is not the real owner of the lands claimed by her under the above deed, but that the husband is the real owner thereof. The wife then seeks to impress a trust on such lands, not as the property of the mother, but as the property of the husband. It is thus evident that the wife seeks to join the mother to this action, not to fix any trust against the property of the mother, but only to divest the mother of title to such property and vest the same in the husband. The petition seeks to fix a trust on such property only against the husband after the mother has been divested of title. Regardless of its wording, as against the mother, the above is the only legal construction that the wife's petition is susceptible of.

It is evident that any right the wife may have to fix a trust on these lands must rest on the theory that the husband is entitled to recover them from the mother. Since the rights of the wife are against the husband primarily, and since any right she can have against the mother must come through and be for the husband, then certainly the rights of the wife against the mother can rise no higher than their source, the husband. It would hardly be contended that the husband could bring the mother into this divorce action to litigate an adverse title to these lands. If the husband could not do this for himself, it would be a paradox to say that the wife, who is asserting no title, but a right to impress a trust for her own benefit against the property of the husband, can do it for him.

Section 29a of Article 1995, R. C. S. 1925, as amended, reads as follows:

"29a. Two or more defendants.—Whenever there are two or more defendants in any suit brought in any county in this State and such suit is lawfully maintainable therein under the provisions of Article 1995 as to any of such defendants, then such suit may be maintained in such county against any and all necessary parties thereto."

A casual reading of Section 29a will disclose that its provisions are applicable only to "necessary parties." It has no application to any other character or party. In our opinion, we have already demonstrated that the mother, as against her will, is not even a proper party to be joined to this action. If she is not a proper party, she could not be a necessary party. Henderson Grain Co. v. Russ, 122 Texas 620, 64. S. W. (2d) 347.

■ By the provisions of Section 16 of Article 1995, R. C. S. 1925, the venue of divorce actions is laid in the county where the plaintiff has resided six months next before the filing of the suit. By the provisions of Article 4631, R. C. S. 1925, as amended, no plaintiff can maintain a divorce action in this State unless he or she shall have resided in the county where the suit is filed for six months next before the filing of the same. It is settled that Section 16 of Article 1995, supra, is a venue statute, pure and simple, but Article 4631 is more than a mere venue statute in that it defines not only the venue of divorce actions, but the qualifications of the plaintiff to bring the action as well. Of course, neither of these statutes are jurisdictional. Aucutt v. Aucutt, 122 Texas 518, 62 S. W. (2d) 77.

By the provisions of Article 4638, R. C. S. 1925, the court

pronouncing the decree of divorce has jurisdiction, in the divorce action, to decree a division of the estate of the parties in such a way as the court may deem just and right, having due regard for the rights of each party and their children, if any. This statute does not allow the divorce court to compel either party to the divorce action to divest himself or herself of the title to realty. As we construe it, Article 4638, supra, is mandatory in its provisions, and, under its terms, the District Court of Dallas County, as between this husband and this wife, must decree a division of the property. Also, under this statute the division of the property does not have to be equal. The court can be controlled by what the facts may lead him to believe is just and right. In fact, this divorce court in this divorce action, as between these spouses, can go to the extent of decreeing a trust upon the separate estate of the husband for the benefit of the wife. Hedtke v. Hedtke, 112 Texas 404, 248 S. W. 21; Milburn v. Milburn, 254 S. W. 121; Hughes v. Hughes, 259 S. W. 180; Kirkwood v. Domnau, 80 Texas 645, 16 S. W. 428; Helm v. Helm, 291 S. W 648; Farris v. Farris, 15 S. W. (2d) 1083.

█ Where the jurisdiction of the divorce court is invoked in the divorce action by either spouse to determine the rights of property, as between such spouses, the part of the divorce suit regarding property is a part of the very divorce action itself. Burguieres v. Farrell, 126 Texas 209, 87 S. W. (2d) 463. It follows from all that has been said that the District Court of Dallas County is the court of proper venue and jurisdiction, as between the wife and the husband, to adjust property rights. Also, if the facts justify, the divorce court can, as between the wife and the husband, fix a trust for the benefit of the wife on the husband's separate property. In spite of all this, we think none of the statutes we have discussed, and no other statute, can be construed to compel a third party to litigate his or her title to land in the divorce action under the circumstances shown by this record. Finally, it is evident that we hold that the District Court of Dallas County, as the divorce court, has jurisdiction and venue to completely try this case, dissolution of marriage, property rights, trust features, and all, as between the husband and the wife, but, as against her will, the mother is improperly joined hereto. In other words, as against her will, the mother is not even a proper party to this suit.

We answer questions 1 and 2. "No." Question 3 is not

answered, as it is propounded only on condition that either question 1 or question 2 is answered, "Yes."

## MOTION NO. 13625.
### MOTION FOR LEAVE TO FILE PETITION FOR MANDAMUS.

As already shown, the district court overruled the plea of privilege filed by the husband and the mother, respectively, and they both appealed. On original hearing the Court of Civil Appeals at Dallas affirmed the judgments of the District Court of Dallas County as to both pleas. The husband and the mother both filed motions for rehearing. The Court of Civil Appeals duly considered and overruled the motion filed by the husband. On the consideration of the motion filed by the mother the Court of Civil Appeals reached the tentative conclusion that the district court erred in overruling her plea of privilege. In such condition of the record, the Court of Civil Appeals certified questions of law to this Court regarding the mother's plea of privilege. We have already answered such questions in favor of the mother.

The husband duly filed motion in the Court of Civil Appeals to certify certain questions of law to this Court regarding his plea of privilege. This motion was overruled, and the husband has filed in this Court this motion to compel the Court of Civil Appeals to certify such questions. An examination of our opinion answering the certified questions regarding the mother's plea of privilege will demonstrate that the venue of the divorce suit in its entirety, between the husband and the wife, is properly laid in Dallas County. This being true, it would be idle for us to grant this motion. It is therefore overruled.

Opinion delivered January 4, 1939.

### ON REHEARING.

PER CURIAM.

The circumstances antedating the matter involved in this motion are fully detailed in the opinion of this Court in causes No. 7377 and 7456 and Motion No. 13625, Ex parte Scott, Scott v. Scott, and Scott v. Bond et al., (this volume, page 1), 123 S. W. (2d) 306. We here refer to those opinions.

Mrs. Jessica Scott, wife of Winfield Scott, Jr., filed suit for divorce in the District Court of Dallas County. We hereafter refer to Winfield Scott, Jr., as relator. Pending the divorce suit,

the district court entered an order requiring relator to pay alimony to Mrs. Scott. Relator failed to pay such alimony, and the district court entered an order adjudging him in contempt, fined him $100.00, and committed him to jail for three days, and until he should purge himself of contempt by paying the sum of money past due under such alimony order. Relator was committed to jail under such contempt order. This Court granted relator a writ of habeas corpus, and ordered him released on giving bond in the sum of $5,000.00. The bond was given, with relator as principal and Hartford Accident and Indemnity Company as surety, and relator released.

On final hearing of the habeas corpus action in this Court, it was held that the original alimony order entered by the district court was valid, but that the contempt order was void. The final judgment of this Court was that relator be enlarged, but without prejudice to the power of the district court to enforce its alimony order by proper proceedings. It was ordered that should the district court again attempt to enforce the alimony order, relator should have the right to make any lawful defense thereto. The effect of our judgment in the habeas corpus proceeding was to adjudge the contempt proceedings against relator void, and to discharge him from all restraint thereunder. The original order discharging relator did not, in so many words, discharge his surety.

We now have before us a motion by the above-named surety praying that this Court enter an order discharging it as surety. Mrs. Scott has filed contest. In the contest it is asserted that relator has never paid any part of the alimony ordered by the district court, and has absented himself so that it has been impossible for her to get service on him for further contempt proceedings. It seems to be asserted that under such conditions Mrs. Scott has a cause of action against relator's surety.

■ We are of the opinion that Mrs. Scott cannot obtain a right against a surety on an appearance bond given by relator in a habeas corpus proceeding successfully prosecuted by him to secure his release from illegal imprisonment, unlawfully instigated and brought about by her. Besides, such bond has served its purpose. It was primarily an appearance bond. When relator was adjudged illegally restrained, and ordered released, such judgment or order operated, in law, to also discharge the surety, and that just as effectively as though such discharge had been expressly provided in the judgment. It would therefore be idle for this Court to enter the order here prayed for. The surety has already been discharged.

It is ordered that this motion be, and the same is hereby, in all things overruled.

Opinion delivered April 5, 1939.